UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN MOORE, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 18 C 3762 |
| | ) | |
| and | ) | Judge Gary Feinerman |
| | ) | |
| M SQUARED ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MAGIERA DIESEL INJECTION SERVICES, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| REVIVA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Steven Moore and his business M Squared Enterprises, Inc. (together, "Moore") sued diesel repair and auto parts shop Magiera Diesel Injection Services, Inc. and auto parts manufacturer Reviva, Inc., alleging violations of the Magnusson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, and state law in connection with a series of repairs to Moore's truck. Doc. 4. Magiera moves to dismiss for lack of personal jurisdiction under Civil Rule 12(b)(2) or improper venue under Rule 12(b)(3) or, in the alternative, to transfer the case to the Northern District of Indiana under 28 U.S.C. § 1404(a). Doc. 25. Because the § 1404(a) issue is far easier to resolve than the personal jurisdiction or venue issues, the court exercises its discretion under *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S.

1

422 (2007), to first address § 1404(a), *see In re LimitNone, LLC*, 551 F.3d 572 (7th Cir. 2008), and transfers the suit to the Northern District of Indiana.

**Background**

In resolving a § 1404(a) motion, the court accepts the complaint's well-pleaded factual allegations, as supplemented by the parties' evidentiary materials, and draws all reasonable inferences in Moore's favor. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 808-09 (7th Cir. 2016). The facts are set forth as favorably to Moore as the relevant materials permit. *See ibid*. In setting forth the facts at this stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Moore, a resident of Dolton, Illinois, owns a 2003 Dodge Ram 3500 truck that he uses for business and personal purposes. Doc. 4 at ¶¶ 1, 7, 18. His business, M Squared, is located in Hazel Crest, Illinois. *Id*. at ¶ 1. Magiera operates a truck repair and parts shop in Crown Point, Indiana, some 30 miles from both Moore's home in Dolton and M Squared's location in Hazel Crest. *Id*. at ¶ 3; Doc. 43 at 7.

On July 1, 2016, Moore dropped off his truck for repairs at Magiera, complaining of an unusual noise. Doc. 4 at ¶¶ 13-14. Moore provided Magiera with his Illinois address and telephone number. Doc. 43 at 8. The next day, a Magiera mechanic named Mark told Moore over the phone that the truck needed a new motor, and Moore gave Mark permission to perform a "leak down." Doc. 4 at ¶ 16. Mark called later that day to report that the leak down revealed defects in two cylinders that required rebuilding the engine. *Id*. at ¶ 17. Moore said he would consider the repair but that he needed to use the truck in the meantime. *Id*. at ¶¶ 18-19.

When Moore retrieved the truck from Magiera some twenty-four hours after dropping it off, every dashboard warning light was illuminated and the truck had so little power that Moore

had to put it in neutral at every stoplight to keep it from stalling. *Id*. at ¶ 20. Moore knew that he would lose money every day the truck was out of commission, so he felt pressure to bring it back to Magiera for the repair that Mark had recommended. *Id*. at ¶ 22. Mark agreed to repair the truck for $9,000 plus installation costs, and he told Moore the job would be done in two weeks. *Id*. at ¶¶ 21, 24.

Three weeks later, Mark called Moore and told him that six injectors had to be replaced at a cost of $2,800. *Id*. at ¶ 24. Moore alleges that Mark damaged the injectors during the leak down, or that Mark replaced the original injectors with faulty ones to inflate repair costs, or that the engine was never defective and the faulty injectors alone caused his car trouble. *Id*. at ¶ 25. Moore authorized the additional repair, which took another week. *Id*. at ¶ 26. When Moore reclaimed the truck, Mark presented him with a warranty from Reviva, a Minnesota business that designed and manufactured the remanufactured engine. *Id*. at ¶¶ 2, 12, 27.

The truck broke down two weeks later. Mark sent a tow truck to Illinois to retrieve it and, upon inspection, determined that it would need a new starter at a cost of $600. *Id*. at ¶ 28; Doc. 43 at 8. Moore warned Mark that oil had begun to pool around the oil filler cap, but Mark told him that the liquid was power steering fluid. Doc. 4 at ¶ 28. Two weeks after Mark replaced the starter, one of Moore's drivers reported that the truck was making noise and was low on oil. *Id*. at ¶ 29. Moore took the truck back to Magiera. *Ibid*. After two weeks, Mark told Moore that he could not fix the truck and that the engine's warranty would not be honored. *Id*. at ¶ 30.

## Discussion

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

might have been brought … ."  28 U.S.C. § 1404(a).  Transfer under § 1404(a) "is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998); *see also Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 62 (2013) ("In the typical case … , a district court considering a § 1404(a) motion … must evaluate both the convenience of the parties and various public-interest considerations."); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The statutory language … is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice.").  The moving party bears the burden of demonstrating that a transfer is clearly warranted.  *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).  "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."  *Coffey*, 796 F.2d at 219.

As to the first step of the transfer analysis, venue is proper in the Northern District of Indiana, the proposed transferee court, because "a substantial part of the events or omissions giving rise to the claim occurred" in that District.  28 U.S.C. § 1391(b)(2).  Moore argues that the Northern District of Indiana is an improper venue for his MMWA claim because the Act permits a consumer "to bring a suit where he claims to be 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this [Act] or under a written warranty, implied warranty, or service contract.'"  Doc. 43 at 12-13 (quoting 15 U.S.C. § 2310(d)) (internal quotation marks added).  The language just quoted from Moore's brief comes directly from *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 522 (7th Cir.

4

2003). In context, it is clear that *Voelker* used the word "where" to mean "in a *factual scenario* in which," not "in the *physical location* in which." Indeed, the portion of the MMWA quoted in *Voelker* has nothing to do with venue; rather, it provides consumers with a cause of action and defines federal jurisdiction over their claims. *See* 15 U.S.C. § 2310(d).

The next step in the 1404(a) analysis looks to convenience. The convenience factors include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience [of] the parties." *Law Bulletin Publ'g*, 992 F. Supp. at 1017. The first factor favors this District. A plaintiff's choice of forum typically deserves "substantial weight, particularly when it is his home forum," *Baker v. Smith & Wesson Corp.*, 2019 WL 277714, at *3 (N.D. Ill. Jan. 22, 2019), and this District is Moore's home forum.

The remaining convenience factors overwhelmingly favor the Northern District of Indiana. First, nearly all material events occurred in Indiana. Granted, Moore's truck allegedly broke down in Illinois and he received the allegedly fraudulent phone calls there. But those minor Illinois connections pale in comparison to the case's connections with Indiana, where all the repair work was performed, where the offending engine was installed, where the purported warranties were given, and from which the purportedly fraudulent phone calls were placed.

Second, the Northern District of Indiana courthouse in Hammond is far more convenient for the parties than the Northern District of Illinois courthouse in Chicago. The court takes judicial notice under Evidence Rule 201(b) of the following facts drawn from Google Maps. *See Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177 n.3 (7th Cir. 2013) ("We have taken judicial notice of—and drawn our distance estimates from—images available on Google Maps, a source whose accuracy cannot reasonably be questioned, at least for the purpose of determining general

5

distances.") (internal quotation marks omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Moore's home in Dolton is just over five miles driving distance from the Hammond courthouse but over twenty miles from the Chicago courthouse; Moore's business in Hazel Crest is about sixteen miles driving distance from the Hammond courthouse but over twenty-four miles from the Chicago courthouse; and Magiera is about twenty-six miles driving distance from the Hammond courthouse but about forty-five miles away from the Chicago courthouse. Those figures understate the inconvenience of a Chicago venue because they do not account for Chicago's heavy rush hour traffic. To get to the Chicago courthouse at 9:00 a.m., Moore would have to drive between forty-five minutes and an hour and forty minutes, if he left from his house, or between forty-five minutes and an hour and fifty minutes, if he left from his business, and Magiera's principal would have to drive an hour to an hour and fifty minutes. The Hammond courthouse, by contrast, is twelve to eighteen minutes from Moore's home, twenty-two to thirty-five minutes from Moore's business, and thirty to forty-five minutes from Magiera.

Neither Chicago nor Hammond is particularly convenient for Reviva, which is located in Minnesota. But even assuming that a Chicago venue would be slightly more convenient for Reviva, the party convenience factor would still favor the Hammond venue due to its proximity to all other parties.

For much the same reason, a Hammond venue would best serve the witnesses and facilitate access to evidence. The only likely witnesses apparent from the complaint are the parties' employees, most of whom presumably live near their respective workplaces. The Hammond courthouse would be more convenient for those witnesses for the same reasons it would be more convenient for the parties. Likewise, any physical evidence—most notably the

6

truck itself—is likely in Moore's or Magiera's possession and will therefore be closer to Hammond than to Chicago. The location of documentary evidence does not affect the analysis, because in this day and age, documents can easily be transferred from place to place. *See Sojka v. DirectBuy, Inc.*, 2014 WL 1089072, at *3 (N.D. Ill. Mar. 18, 2014) ("There is every reason to believe that all relevant documents can easily be transported, electronically or otherwise, to Chicago or Hammond … ."); *Carter v. Baldwin*, 2017 WL 3310976, at *2 (N.D. Ill. Aug. 3, 2017) (similar).

Moore argues that a Chicago venue is preferable because Hammond would be inconvenient for his attorney. But "the location of counsel is not a relevant factor under § 1404(a); otherwise, a plaintiff could manipulate the selection of a forum by its choice of an attorney." *Thomas v. City of Woodstock*, 2011 WL 3841811, at *2 (N.D. Ill. Aug. 30, 2011) (internal alterations and brackets omitted); *see also Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) ("[Section] 1404(a) [does not] provide that the convenience of counsel is a factor to be considered."); *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a).").

In sum, the convenience factors strongly favor transfer. The court next evaluates the interest-of-justice factors. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation*, 626 F.3d at 978. The relevant factors include "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Ibid*. (citations omitted).

The first factor is neutral, as there is only a modest difference in the expected speed of case resolution between the two courts. The median time from filing to disposition is 7.6 months in this District and 12.9 months in the Northern District of Indiana. United States District Courts—National Judicial Caseload Profile 47, 50 (2018), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf. The median time from filing to trial is 37.8 months in this District and 38.8 months in the Northern District of Indiana. *Ibid*. This case is likely to proceed at a materially similar pace in either forum.

The second factor, familiarity with applicable law, is uncertain. For the reasons given below, the court will not at this stage determine which State's choice-of-law rules apply, let alone which State's substantive law governs the state law claims. The court will therefore draw the inference most favorable to Moore and assume that this factor weighs against transfer.

The third factor, desirability of resolving controversies in each locale, favors transfer. The Hammond courthouse is nearer than the Chicago courthouse to the parties and the locations of all material events. The fourth factor, the relationship of each community to the controversy, moderately favors transfer. Although Moore lives in Illinois, virtually all the events giving rise to the suit took place in Indiana, so the Northern District of Indiana's community has a moderately greater stake in and relationship to the litigation.

In sum, one convenience factor weighs against transfer, while four convenience factors favor transfer. Of the interest of justice factors, one is neutral, two favor transfer, and at most one weighs against transfer. While each factor favoring transfer might not have been sufficient, standing alone, to merit transfer, their combined weight does. Magiera therefore has met its burden of showing that transfer to the Northern District of Indiana is clearly warranted.

The attentive reader will notice that the court has skipped one aspect of the § 1404(a) analysis. Because § 1404(a) may be deployed only if venue is proper in the district where the case was filed, *see* 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3844 (4th ed. 2011 & Supp. 2019) ("Transfer is possible under Section 1404(a) only if the transferor court is a proper venue under the applicable venue provisions."), this case may be transferred under § 1404(a) only if venue is proper in this District. It is unnecessary to determine whether venue is proper here, however, because if venue were improper, the court would transfer this case to the Northern District of Indiana under § 1406(a), which allows transfer from a district where venue is improper to a district where venue is proper. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *In re LimitNone*, 551 F.3d at 575; *Schwarz v. Sellers Markets, Inc.*, 812 F. Supp. 2d 932, 939 (N.D. Ill. 2011). That is, if venue were proper here, the court would transfer the case to the Northern District of Indiana under § 1404(a), and if venue were improper here, the court would do the same thing under § 1406(a).

The one remaining fly in the ointment, alluded to above, is choice of law. If a case is transferred under § 1404(a), the transferor state's choice-of-law rules govern, while if a case is transferred under § 1406(a), the transferee state's choice-of-law rules govern. *See Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010); *Lafferty v. St. Riel*, 495 F.3d 72, 76-77 (3d Cir. 2007). It therefore may be of consequence in some cases whether a suit is transferred under § 1404(a) or under § 1406(a). Two features of this case make it imprudent to decide that question here.

First, the venue issues posed by Magiera's motion—like the related personal jurisdiction issues, *see* 28 U.S.C. 1391(b)(1), (c)(2)—are difficult. Although virtually all events giving rise

9

to Moore's MMWA and state warranty claims occurred in Indiana, Moore's fraud claim arises from allegedly fraudulent statements made during calls from a Magiera employee in Indiana to Moore's Illinois phone number while Moore was in Illinois. Magiera's motion therefore poses complicated questions concerning how to apply *Walden v. Fiore*, 571 U.S. 277 (2014), to electronic communications, *see*, *e.g.*, *Matlin v. Spin Master Corp.*, 921 F.3d 701, 704-07 (7th Cir. 2019); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802-03 (7th Cir. 2014), and the difficult question whether personal jurisdiction and/or venue must be assessed on a claim-by-claim basis or whether one claim properly brought in this District satisfies constitutional and statutory requirements for all other properly joined claims, *see* 14D Charles Wright, Miller, & Cooper, Federal Practice and Procedure § 3808 (4th ed. 2011 & Supp. 2019) (describing differences in opinion concerning whether pendent venue exists and how it functions); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994) (declining to decide whether a court with personal jurisdiction over the defendant on a state law claim can exercise pendent personal jurisdiction over other claims).

Second, choice of law ultimately may not be a factor in this case. "[A] district court is required to engage in a choice-of-law analysis only if there is a conflict between Illinois law and the law of another state such that a difference in law will make a difference in the outcome." *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (internal quotation marks omitted). No such conflict may arise here, as the same substantive law might well apply regardless of which State's choice-of-law rules govern: Illinois and Indiana choice-of-law rules for tort claims tend to favor the law of the State with the greatest connection to the case, *compare ibid*. ("Illinois law tells us that the law of the state with the most significant relationship to the occurrence and the parties applies in the event of a conflict."), *with Katz-*

10

*Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) ("Indiana looks to the location of the last event necessary to make the defendants liable for the alleged wrong and then examines whether the place of the tort is sufficiently connected to the legal action.") (internal quotation marks and brackets omitted), and their choice-of-law rules for contract disputes are identical, *compare Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004) ("Illinois has adopted the 'most significant contacts' test proffered by the Restatement (Second) of Conflicts § 188 (1971) in deciding choice-of-law disputes with respect to contractual issues. Under this test, the contacts relevant to the choice-of-law decision include the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties.") (internal quotation marks, citations, and brackets omitted), *with Large v. Mobile Tool Int'l, Inc.*, 724 F.3d 766, 771 (7th Cir. 2013) (same, for Indiana).

Thus, in the interest of judicial economy, the court will not decide whether personal jurisdiction and venue are proper in this District, and thus whether transfer to the Northern District of Indiana should be effected under § 1404(a) or, rather, under § 1406(a); transfer is appropriate whichever statute applies. *See Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, 2009 WL 1845236, at *8 (E.D. Pa. June 26, 2009) ("We need not decide whether venue is proper here, since the transfer is compelled in the interest of justice under either 28 U.S.C. § 1404(a) or § 1406(a)."); *Sable Dev. Corp. v. Huber Corp.*, 1997 WL 667924, at *2 n.1 (N.D. Tex. Oct. 20, 1997) (same); *Marvin Kommel Prods., Inc. v. Lettergraphics Int'l, Inc.*, 1984 WL 975, at *3 n.3 (S.D.N.Y. Oct. 10, 1984) (same); *see also In re LimitNone, LLC*, 551 F.3d at 576, 578 (observing that "the Supreme Court has approved of addressing … venue before personal jurisdiction," as long as the district court provides a "sound prudential justification") (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)).

**Conclusion**

Magiera's § 1404(a) motion to transfer is granted, and the suit is transferred to the Northern District of Indiana. Magiera's Rule 12(b)(2) motion, which argues that it is not subject to personal jurisdiction in Illinois, and its Rule 12(b)(3) motion, which argues that venue does not lie in the Northern District of Illinois, are denied as moot. Magiera also brings a Rule 12(b)(6) motion to dismiss one of Moore's state law claims, and that motion is denied without prejudice to renewal in the transferee court. Magiera's undeveloped suggestion that the amount in controversy requirement may not be satisfied for Moore's MMWA and state law claims, Doc. 26 at 2, is likewise reserved for the transferee court. *See In re LimitNone*, 551 F.3d at 576 ("[T]he district court was not required to determine its own subject-matter jurisdiction before ordering the case transferred.") (citing *Sinochem*, 549 U.S. at 431).

June 17, 2019

United States District Judge